UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHRISTOPHER R. COKER, CRC HOLDINGS LLC, and KYLE RICHARDSON,<br><br>Plaintiffs,<br><br>vs.<br><br>LUIS G. ANDRADE, ANDRADE HOLDINGS LLC, and THE LUIS ANDRADE LIVING TRUST,<br><br>Defendants. | Civil Action No. _____<br><br>Jury Trial Demanded |

## PLAINTIFF'S ORIGINAL COMPLAINT

COME NOW Christopher R. Coker, CRC Holdings LLC, and Kyle Richardson, Plaintiffs, and allege as follows:

### I.  PARTIES

1. Plaintiff Christopher R. Coker ("Plaintiff Coker") is a resident of Tarrant County, State of Texas.

2. Plaintiff CRC Holdings LLC ("Plaintiff CRC Holdings") is a Texas Limited Liability Company with a principal address of 9001 Airport Freeway, Suite 400 N, Richland Hills, TX 76180.

3. Plaintiff Kyle Richardson ("Plaintiff Richardson") is a resident of Tarrant County, State of Texas.

4. Defendant Luis G. Andrade ("Defendant Andrade") is a resident of Arkansas and can be served with process at his residence located at 1603 Rannoch Trace, Fort Smith, AR 72908.

1

5. Defendant Andrade Holdings LLC ("Defendant Andrade Holdings") is an Arkansas Limited Liability Company with a principal address of 1603 Rannoch Trace, Fort Smith, Arkansas 72908.

6. Upon information and belief, Defendant The Luis Andrade Living Trust "(Defendant Andrade Trust") is a revocable trust with Defendant Andrade as the Settlor.

## II.   JURISDICTION AND VENUE

7. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1332(A). The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. This Court also has original subject-matter jurisdiction pursuant to 18 U.S.C. §1964(c) and 28 U.S.C. §1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

9. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Defendant Andrade, Defendant Andrade Holdings, and Defendant Andrade Trust (collectively, "Defendants") because they have purposefully directed their acts and omissions to act within the boundaries of this federal district.

11. This Court further has personal jurisdiction over Defendants under 28 U.S.C. §1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.

12. Venue is properly before this Court under 28 U.S.C. §1391(a)(2) as a substantial part of the events giving rise to this claim occurred in Tarrant County, State of Texas.

## III. BACKGROUND

13. Plaintiff Coker is Texas entrepreneur with several successful businesses, including Plaintiff CRC Holdings. He began exploring the idea of creating a new venture, Stratos Ammunition LLC, to manufacture ammunition.

14. About a year ago, Plaintiff Coker met Defendant Andrade, a recent college graduate allegedly seeking to build his own set of businesses. Defendant Andrade already had Defendant Andrade Holdings, which included alternative trade names such as:

   a. Andrade Enterprises

   b. Elite Lawn, Landscaping, and Excavation

   c. JLX Construction, and

   d. JLX Services

15. Defendant Andrade claimed that his family in Brazil had a substantial fortune—including some $60 million set aside for his use in the Defendant Andrade Trust. He informed Plaintiff Coker that he wanted to use this money to build new enterprises around the region.

16. Plaintiff Coker and Defendant Andrade began discussing potential options for start-up businesses.

### A. The 1999 Cessna 172S

17. One such idea was the creation of a flight school centered around the Dallas/Ft. Worth area that was going to be called Southern Eagle LLC.

18. On or about July 3, 2020, Defendant Andrade Holdings and Plaintiff CRC Holdings entered into a Purchase Agreement for a 1999 Cessna 172S (registration number N912JR). The terms of the agreement included that Defendant Andrade Holdings would be responsible for the down payment of $20,000.00 while Plaintiff CRC Holdings would be responsible for the

remaining $229,500.00. The owner name of the aircraft was registered as Defendant Andrade Holdings on July 30, 2020.

19. Plaintiff CRC Holdings paid off the remaining balance of $229,500.00 and no debt was owed on the aircraft.

20. On December 11, 2020, Defendant Andrade Holdings transferred ownership of the aircraft to Van Bortel Aircraft, Inc. This transaction occurred without knowledge or compensation to Plaintiff CRC Holdings or Plaintiff Coker.

21. On or about March 1, 2021, ownership of the aircraft was transferred from Van Bortel Aircraft, Inc. to N912JR LLC.

22. In a letter dated June 22, 2021, counsel for Defendant Andrade and for Defendant Andrade Trust acknowledged the debt of $229,500.00. Despite this acknowledgement, Defendants have failed to resolve the debt. *See Letter*, attached as **Exhibit 1.**

**B. The Ford F-250 Truck**

23. One of the services provided by Defendant Andrade Holdings was lawn care, which operated under the fictitious name of Elite Lawn, Landscaping and Excavation.

24. Defendant Andrade spoke with Plaintiff Coker and Plaintiff Richardson about the potential to expand the lawn care business. Specifically, Defendant Andrade claimed that there was another contract for work available but required getting the business another truck. Defendant Andrade said that the contract would be lost unless the truck was provided immediately.

25. Plaintiff Richardson found a suitable truck and Defendant Andrade agreed to reimburse him for the cost of the truck.

26. On August 4, 2020, Plaintiff Richardson drove to the truck's location, paid the purchase price of $36,697.09, and drove the vehicle to Defendant Andrade Holdings. Plaintiff

4

Richardson used his own personal funds and paid for the truck by check—which cleared without issue on August 6, 2020.

27. Around the end of March 2021, Defendant Andrade and Plaintiff Richardson discussed the truck title. The parties agreed that the title would be in Defendant Andrade's name. However, Defendant Andrade offered to send Plaintiff Richardson the title to another truck as a good faith gesture. Eventually, Plaintiff Richardson received an unendorsed title to another truck.

28. On March 29, 2021, Defendant Andrade asked Plaintiff Richardson when he was available to come get a cashier's check to reimburse him for buying the truck.

29. On March 31, 2021, Plaintiff Richardson sent a text to Defendant Andrade asking for an update on the check.

30. On April 2, 2021, Plaintiff Richardson again reached out to Defendant Andrade for an update on the check. Defendant Andrade responded that he would find out if the check had been mailed to the proper address. About an hour later, Defendant Andrade confirmed the check had been mailed to the correct address.

31. On April 5, 2021, Plaintiff Richardson sent another text informing Defendant Andrade that the check still had not been received and asked for more information. Defendant Andrade did not respond.

32. On April 11, 2021, Plaintiff Richardson sent a text to Defendant Andrade asking if the title to the new truck had been received. Defendant Andrade responded that he picked it up out of his mailbox that day and that the payment check should be to Plaintiff Richardson within two days.

33. On April 14, 2021, Defendant Andrade sent a picture via text to Plaintiff Richardson showing a large amount of cash. The message from Defendant Andrade included "I

got your money" but that he did not get to the bank in time. Defendant Andrade claimed he would take the $39,000.00 cash that he had in a safe to the bank to transfer to Plaintiff Richardson in the morning.

34. On April 15, 2021, Defendant Andrade sent a text to Plaintiff Richardson informing him that he was dealing with legal documents that day but would make sure the cash would be in the bank by the next day at noon to cover the check for the truck.

35. On April 16, 2021, Defendant Andrade spoke with Plaintiff Richardson on the phone concerning payment for the truck. Defendant Andrade claimed to be adding Plaintiff Richardson as a recipient for funds from his bank account.

36. On April 17, 2021, Defendant Andrade sent a text to Plaintiff Richardson asking if the funds had made it into his account yet—which they had not.

37. On April 19, 2021, Defendant Andrade sent another text asking if the transaction had been completed. Plaintiff Richardson informed him it had not.

38. On April 27, 2021, Defendant Andrade made a check out to Plaintiff Richardson for $40,000.00. Plaintiff Richardson received the check in the mail on or about May 1, 2021. However, Defendant Andrade asked him to hold onto the check for a couple of weeks so that he could try to pay him in cash instead.

39. After several weeks without resolution, on or about June 17, 2021, Plaintiff Richardson presented the check for payment. He then learned that Defendant Andrade stopped payment on it.

40. In a letter dated June 22, 2021, counsel for Defendant Andrade and for Defendant Andrade Trust disputed the amount of the debt for the truck. Instead, counsel suggested the truck

was originally purchased for a cheaper price, implying that Defendant Andrade did not owe the full amount. *See* **Exhibit 1**.

C. **Stratos Investment and the Brazil Trip**

41. As part of their business planning, Plaintiff Coker and Defendant Andrade decided to form a new business venture, Stratos Ammunition LLC ("Stratos Ammunition"). The plan was for the new company to manufacture ammunition.

42. On July 29, 2020, Plaintiff Coker provided Stratos Ammunition start-up funds through a check for $50,000.00. The check posted on July 30, 2020.

43. On July 31, 2020, Plaintiff Coker wired another $50,000.00 to Stratos Ammunition.

44. Defendant Andrade siphoned off all of the funds from the account for his own personal use and not for the benefit of Stratos Ammunition. He did this without the knowledge or approval of Plaintiff Coker who was unaware of the issue for some time.

45. To get a better understanding of Defendant Andrade's family businesses in Brazil, Plaintiff Coker purchased round-trip tickets for himself and Defendant Andrade to go to Sao Paulo, Brazil. The total value of the tickets was $3,898.50.

46. On September 14, 2020, the two of them flew overnight to Brazil and stayed with the alleged parents of Defendant Andrade at their condominium. Defendant Andrade claims that his parents were building a new house that was not yet finished.

47. After touring farm and ranch properties allegedly owned by the Andrade family, Plaintiff Coker and Defendant Andrade took the return flight home on September 17, 2020.

48. When Plaintiff Coker became aware of the funds having been withdrawn from Stratos Ammunition, Defendant Andrade claimed he simply made a mistake and pulled money

7

from the wrong account. Defendant Andrade has never returned these funds to Stratos Ammunition or Plaintiff Coker.

D. **American Express Charges**

49. Plaintiff Coker and Defendant Andrade reached an agreement authorizing the use of a corporate American Express card. Defendant Andrade would be allowed to use the card as long as he paid the monthly statements.

50. Between September 1, 2020, and October 2, 2020, Plaintiff Coker paid a total of $23,576.51 on the American Express account.

51. Between November 10, 2020, and February 2, 2021, Stratos Ammunition made four payments totaling $143,099.54 on the American Express account.

52. On March 2, 2021, Stratos Ammunition's attempted payment of $8,372.79 to the American Express account was returned unpaid.

53. On March 5, 2021, Stratos Ammunition's attempted payment of $10,183.69 to the American Express account was returned unpaid.

54. After Stratos Ammunition stopped making payments on the account, Plaintiff Coker was forced to begin making payments. From March 5, 2021, through April 6, 2021, he paid a total of $17,838.44 on the American Express account.

55. In a letter dated June 22, 2021, counsel for Defendant Andrade and for Defendant Andrade Trust claimed that Southern Eagle paid the American Express account in full each month. However, counsel claimed he would have to investigate more before accepting this debt as owed by Defendant Andrade. *See* **Exhibit 1**.

56. To date, Defendants have not provided any further information or resolution.

### E. Attempt to Satisfy Debts

57. On April 27, 2021, Defendant Andrade provided Plaintiff Coker with a check made out to him for $402,672.00. The purpose of this check was to resolve Defendant Andrade's outstanding debt. Plaintiff Coker was asked to hold the check for a few days so that funds could be transferred into the appropriate account to cover the check.

58. In a letter dated June 22, 2021, counsel for Defendant Andrade and for Defendant Andrade Trust informed Plaintiff Coker that this check would not be honored if presented. *See* **Exhibit 1**.

### IV.   CAUSES OF ACTION

#### COUNT ONE: Civil Racketeering

59. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

60. The conduct of Defendants constitutes racketeering as set forth in 18 U.S.C. §1964(c).

61. Defendants further their unlawful activities through the use of banks, the mail, telephones, and the internet.

62. The acts of Defendants constitute a threat of continuing activity that extends beyond the initial period of time when the predicate acts were originally committed. These acts were continuous and interrelated as they had similar goals, purposes, methods, and/or results.

63. The wrongful conduct of Defendants is likely to continue to other individuals and businesses.

64. Defendants are culpable persons and/or entities as they committed the racketeering violations and/or conspired to do so.

65. The activity by Defendants evidences a pattern of racketeering.

66. The activity by Defendants was and is connected to the acquisition, establishment, conduct, or control of an enterprise.

67. Defendants knew their acts and failures to act were illegal.

68. Defendants have received funds from a pattern of racketeering activity and have invested those funds in an enterprise.

69. Defendants have acquired and/or maintained an interest in an enterprise through a pattern of racketeering activity.

70. Defendants employed and/or associated with an enterprise have conducted the affairs of the enterprise through a pattern of racketeering activity.

71. Defendants have conspired to do the acts expressed in the three previous paragraphs.

72. As a result of the conduct of Defendants, Plaintiffs have been damaged in an amount to be determined at trial, plus interest, which is subject to trebling under federal law.

## COUNT TWO: Unjust Enrichment

73. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

74. Defendants obtained value and/or benefit to which they were not entitled, including but not limited to the aircraft, the truck, cash, and extensive credit card charges.

75. Defendants acquired the value and/or benefit at the detriment of Plaintiffs.

76. No contract exists between Defendants and Plaintiffs due to unenforceability, impossibility, mistake, voidness, or absence of a formal agreement.

77. As a result, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

## COUNT THREE: Fraud

78. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

79. Defendants knowingly or through gross misconduct withheld and concealed material facts from Plaintiffs for the purpose of profiting from the detriment of Plaintiffs.

80. Defendants knowingly and intentionally falsified information in order to profit.

81. Defendants withheld and/or concealed material information from Plaintiffs in order to profit at the expense of Plaintiffs.

82. Defendants owed a legal and equitable duty to Plaintiffs.

83. As a result of the actions and omissions by Defendants, Plaintiffs suffered injury.

84. The actions of Defendants were intentional and reckless, without regard for the truth, and designed to induce Plaintiffs to act or refrain from taking action.

85. As a result, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

## COUNT FOUR: Conversion

86. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

87. Defendants are wrongfully in possession of money and/or property to which Plaintiffs have a right.

88. The actions of Defendants have harmed Plaintiffs by causing financial loss.

89. As a result, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

## COUNT FIVE: Fraudulent Transfer

90. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

91. Defendants fraudulently transferred cash and/or valuable items to themselves.

92. Plaintiffs did not receive reasonably equivalent value, if any at all, from the transfers by Defendants.

93. As a result, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

## COUNT SIX: Breach of Fiduciary Duty

94. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

95. Defendants have a fiduciary duty to act in the best interests of Plaintiffs. Defendants assumed a fiduciary responsibility by joining into business ventures with Plaintiffs.

96. Defendants breached this fiduciary duty to Plaintiffs by misappropriating funds and property without authority or justification.

97. The breaches by Defendants were the direct and proximate cause of damages to Plaintiffs.

98. As a result, Plaintiffs have been damaged in an amount to be determined at trial, plus interest.

## COUNT SEVEN: Breach of Contract

99. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

100. Plaintiffs Coker and Defendant Andrade's operating agreement for Stratos Ammunition is an enforceable contract governing its members.

101. Defendant Andrade misappropriated funds and/or property from Stratos Ammunition in violation of the operating agreement.

102. Plaintiffs also had agreements with Defendants regarding Defendant Andrade Holdings.

103. Defendants misappropriated funds and/or property from Defendant Andrade Holdings in violation of those agreements.

104. Texas law, including but not limited to TEX. BUS. ORG. CODE ANN. §101.463 provides that Plaintiffs can seek recovery from Defendants for these losses—the amount of which to be determined at trial.

## PUNITIVE DAMAGES

105. Plaintiffs hereby incorporate each of the preceding paragraphs by reference, as if fully set forth herein.

106. The actions and/or failures to act by Defendants were done with malice or gross negligence.

107. As a result, punitive damages are appropriate and should be awarded against Defendants.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Award damages to Plaintiffs in an amount to be determined at trial;

b. Enter judgment against Defendants in an amount equal to three times the amount of damages to Plaintiffs plus a civil penalty for each violation of 18 U.S.C. §1964;

c. Restitution to Plaintiffs of all money, property, and benefits Plaintiffs were unlawfully defrauded and deprived of by Defendants;

d. Award punitive damages to Plaintiffs;

e. Award attorney fees and costs to Plaintiffs; and,

f. Grant to Plaintiffs all such other relief the Court may deem just and proper.

DATED this 14th day of July, 2021.

        Respectfully submitted,

        WELSH & MCGOUGH, PLLC

        <u>/s/ Catherine Z. Welsh</u>
        Catherine Z. Welsh
        Texas Bar No. 24010508
        Welsh & McGough, PLLC
        Midway Building
        2727 East 21st Street, Suite 600
        Tulsa, OK 74114
        T: (918) 585-8600
        F: (918) 794-4411
        cathy@tulsafirm.com
        *Attorney for Plaintiff*